# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY BOYCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 2967 |
| v. ) | |
| ) | |
| DANIEL A. GRAY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 28, 2013, Plaintiff Anthony Boyce, an inmate of the Illinois Department of Corrections ("IDOC"), filed an Amended Complaint, by counsel, alleging that Defendant Dr. Jonathan Kelly, M.D. ("Dr. Kelly"), a psychiatrist employed by Wexford Health Sources, Inc. ("Wexford"),[1] along with certain IDOC employees, namely, Daniel Gray, Junette Bennett, Kimberly Briney, Ralph Burkeybile, Salvador Godinez, and Marcus Hardy, violated his Eighth Amendment rights. Before the Court is Dr. Kelly's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1. For the following reasons, the Court grants Dr. Kelly's motion in its entirety and dismisses Dr. Kelly as a Defendant to this lawsuit. The Court will address the IDOC Defendants' partial motion for summary judgment in a separate order.

---

[1] In his Amended Complaint, Plaintiff also named Mark Hale as a Defendant. Hale is the president and chief executive officer of Wexford. Because Defendant Hale had no personal involvement in relation to Plaintiff's present deliberate indifference claims, the Court dismisses any such claims against him. *See Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) ("§ 1983 liability is premised on the wrongdoer's personal responsibility"); *see also Boyce v. Obaisi*, No. 13 C 5746, 2015 WL 5462137, at *15 (N.D. Ill. Sept. 16, 2015) (same).

## BACKGROUND

I. **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v.*

*Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). Also, the Court will not consider the additional facts set forth in Plaintiff's Rule 56.1(b)(3)(A) Response because any such facts must be in his Rule 56.1(b)(3)(C) Statement of Additional Facts. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008); *see also Sojka,* 686 F.3d at 398. With these standards in mind, the Court turns to the relevant facts underlying this lawsuit.

## II.     Relevant Facts

Plaintiff Anthony Boyce is an inmate at IDOC serving a life sentence for murder and was incarcerated at Stateville Correctional Center ("Stateville") during the relevant time period. (R. 94, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) Wexford employs Defendant Jonathan Kelly, M.D., who is a psychiatrist at Stateville. (*Id.* ¶ 2.) Dr. Kelly's primary duty at Stateville is to evaluate inmates regarding whether psychotropic medications are appropriate for the inmates' mental health care treatment. (*Id.* ¶ 7.) Dr. Kelly's caseload is comprised of inmates, who the Stateville Mental Health Department's psychologist-in-charge assigns to him. (*Id.* ¶ 8.)

Plaintiff began receiving mental health care on May 18, 2011, at which time IDOC psychologist Charles Wood saw him. (*Id.* ¶ 6.) On May 24, 2011, Dr. Kelly conducted Plaintiff's initial mental health evaluation regarding the appropriateness of psychotropic medication to treat Plaintiff's depression. (*Id.* ¶ 9.) Dr. Kelly prescribed Remeron, an anti-depression mediation, and instructed Plaintiff to follow up in four weeks. (*Id.* ¶ 11.) Plaintiff did not report any suicidal ideations to Dr. Kelly at the initial mental health evaluation. (*Id.* ¶ 10.)

On June 7, 2011, Dr. Kelly examined Plaintiff at his follow-up mental health evaluation. (*Id.* ¶ 12.) On this occasion, Plaintiff did not report any suicidal ideations and Dr. Kelly renewed Plaintiff's Remeron prescription. (*Id.*) On June 8, 2011, July 7, 2011, and August 3, 2011,

Plaintiff had mental health care appointments with Dr. Wood, at which time Plaintiff did not report any suicidal ideations. (*Id*. ¶¶ 13-15.) On August 9, 2011, Dr. Kelly evaluated Plaintiff and discontinued Plaintiff's Remeron prescription based on Plaintiff's complaints that it increased his appetite. (*Id.* ¶ 16.) Dr. Kelly then prescribed Trazadone for Plaintiff's depression. (*Id*.) Plaintiff did not report any suicidal ideations to Dr. Kelly on August 9, 2011. (*Id*.)

On September 20, 2011, Dr. Woods saw Plaintiff for a mental health care appointment, at which time Plaintiff did not report any suicidal thoughts. (*Id*. ¶ 17.) On October 11, 2011, Dr. Kelly examined Plaintiff and renewed his Trazadone prescription. (*Id*. ¶ 18.) Plaintiff did not report any suicidal ideations at this October 2011 appointment with Dr. Kelly. (*Id*.) On October 28, 2011 and November 24, 2011, another psychiatrist, Usha Kartan, M.D., examined Plaintiff. (*Id*. ¶¶ 19, 20.) Again, Plaintiff did not report any suicidal ideations at those appointments. (*Id*.) On December 6, 2011 and January 19, 2012, Dr. Woods assessed Plaintiff's mental health care needs, at which time Plaintiff did not report suicidal thoughts. (*Id.* ¶¶ 21, 22.)

On February 29, 2012, Dr. Kelly saw Plaintiff for an evaluation and discontinued Plaintiff's Trazadone prescription per Plaintiff's request. (*Id*. ¶ 24.) Plaintiff did not report any suicidal ideations to Dr. Kelly at this appointment. (*Id*.) The appointment on February 29, 2012 was the last formal mental health care appointment Plaintiff had with Dr. Kelly. (*Id*. ¶¶ 25, 47.) Stateville Mental Health Department staff took Plaintiff off of Dr. Kelly's caseload because Plaintiff no longer wanted to take psychotropic medications. (*Id*. ¶ 25.) It is undisputed that Plaintiff never reported any suicidal ideations to Dr. Kelly or any other mental health care professionals at Stateville during the time period in which Dr. Kelly treated Plaintiff. (*Id.* ¶ 26.) Further, it is undisputed that Dr. Kelly did not make any clinical findings that Plaintiff was experiencing suicidal ideations. (*Id*. ¶ 52.)

4

Plaintiff maintains that he began having suicidal thoughts beginning in May 2012. (*Id.* ¶ 27.) Around that same time, Stateville health care staff placed Plaintiff on the caseload of Defendant Kimberly Briney, Pys.D., an IDOC Stateville psychologist. (*Id.* ¶¶ 3, 28.) Plaintiff contends that he reported suicidal thoughts to Dr. Briney on May 7, 2012 and July 5, 2012. (*Id.* ¶ 29.) After both the May 7 and July 5, 2012 appointments, Dr. Briney determined that Plaintiff was stable and that he did not present with mental health issues. (R. 96, IDOC Defs.' Stmt. Facts ¶¶ 14, 15, 17.) According to Plaintiff, he reported to a health care staff member that he had suicidal ideations on both July 13, 2012 and July 23, 2012. (Kelly Stmt. Facts ¶ 31.) Plaintiff asserts that he attempted suicide on August 7, 2012 by trying to hang himself with a ripped sheet attached to a vent in his cell. (*Id.* ¶ 32.) On August 9, 2012, Plaintiff reported his suicide attempt during a mental health care evaluation. (*Id.* ¶ 33.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## ANALYSIS

**I.     Exhaustion**

In his summary judgment motion, Dr. Kelly first argues that Plaintiff has failed to exhaust his Eighth Amendment deliberate indifference claim as required by the Prison Litigation Reform Act of 1995 ("PLRA"). *See* 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies is an affirmative defense that a defendant must establish. *See King v. McCarthy,* 781 F.3d 889, 893 (7th Cir. 2015); *Turley v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013). To exhaust administrative remedies, a "prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King,* 781 F.3d at 893. An Illinois inmate begins the exhaustion process by speaking with a counselor. *See* 20 Ill. Admin. Code § 504.810(a); *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014). "When an informal resolution is not achieved by talking to a counselor, an inmate in Illinois has 60 days from the date of the underlying incident to submit a written grievance to the facility's designated grievance officer." *Owens v. Hinsley,* 635 F.3d 950, 955 (7th Cir. 2011); *see also* 20 Ill. Admin. Code § 504.810(a). The grievance officer then submits a recommendation to the warden – the facility's chief administrative officer ("CAO"). *See Roberts,* 745 F.3d at 235. If the inmate is dissatisfied with the response from the CAO, he must then appeal to the Administrative Review Board ("ARB") to exhaust his claim. *See* 20 Ill. Admin. Code § 504.850(a); *Roberts,* 745 F.3d at 235.

In the alternative, an inmate may indicate that his grievance is an emergency by

forwarding it directly to the CAO. *See* 20 Ill. Admin. Code § 504.840; *Roberts,* 745 F.3d at 236; *Fletcher v. Menard Corr. Ctr.,* 623 F.3d 1171, 1174 (7th Cir. 2010). If the CAO determines there is a substantial risk of imminent personal injury or other serious or irreparable harm exists, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." 20 Ill. Admin. Code § 504.840(b). If the CAO declines to treat the grievance as an emergency matter, the inmate may appeal to the ARB. *See* 20 Ill. Admin. Code § 504.850(a); *Thornton v. Snyder,* 428 F.3d 690, 694 (7th Cir. 2005).

Here, it is undisputed that Plaintiff never received a final determination from IDOC's ARB regarding any of the grievances he filed relating to this lawsuit. (Def.'s Stmt. Facts ¶¶ 54, 56.) Nevertheless, Plaintiff argues that he filed numerous emergency grievances with Stateville's CAO, Warden Marcus Hardy. (R. 109, Pl.'s Rule 56.1 Stmt. Facts ¶ 9.) Warden Hardy denied Plaintiff's grievances because they were non-emergencies. (*Id.*) After Plaintiff appealed some of these emergency grievances to the ARB, the ARB returned his grievances for failure to submit copies of the written grievances and the CAO's response to the grievances. (*Id.* ¶¶ 10, 11.) Plaintiff maintains that he sent the ARB the only documents Warden Hardy had given him. (*Id.* ¶ 12.)

Based on this lack of documentation from Warden Hardy and Plaintiff's allegations that IDOC Defendant Daniel Gray retaliated against him for filing grievances, Plaintiff argues he has exhausted his administrative remedies because the PLRA "requires exhaustion only of remedies that are available." *King,* 781 F.3d at 893. As the Seventh Circuit instructs, "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting" his claims. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). When prison officials wrongfully interfere with inmates

7

exhausting their administrative remedies, "the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006). Thus, under the circumstances, Plaintiff has exhausted his claims against Dr. Kelly.

## II. Judicial Estoppel

Next, Dr. Kelly argues that Plaintiff is judicially estopped from bringing his Eighth Amendment deliberate indifference claim. "The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker,* 707 F.3d 756, 760 (7th Cir. 2013); *see also Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014) ("Judicial estoppel is designed to prevent parties from obtaining an unfair advantage by taking a present position that is inconsistent with one successfully taken in the past."). The Supreme Court teaches that the judicial estoppel standard is "not reducible to any general formulation of principle." *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Nonetheless, the Supreme Court has recognized three factors that "typically inform the decision whether to apply the doctrine in a particular case," *see id.,* including "(i) whether the party's positions in the two litigations are clearly inconsistent; (ii) whether the party successfully persuaded a court to accept its earlier position; and (iii) whether the party would derive an unfair advantage if not judicially estopped." *Wells,* 707 F.3d at 760. "Judicial estoppel is a matter of equitable judgment and discretion." *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012).

Dr. Kelly argues that in one of Plaintiff's other lawsuits, namely, case number 12 C 3840, Plaintiff, proceeding pro se, alleged that Stateville forced him to take psychotropic medications.[2]

---

[2] The Court notes that in addition to the present lawsuit, Plaintiff has filed at least nine other civil rights actions in this district. *See Boyce v. Kelly*, No. 12 C 3840; *Boyce v. Carter*, No.

8

(12 C 3840, R. 77, Fourth Am. Compl. ¶ 20; Def.'s Stmt. Facts ¶ 57.) Plaintiff also alleged that he was not a threat to himself or others. (Fourth Am. Compl. ¶ 13; Def.'s Stmt. Facts ¶ 58.) At his deposition in case number 12 C 3840, Plaintiff, however, clarified that "I've never been a threat to – as far as them trying to force me to take medication, at that particular time I wasn't a threat to myself or anyone else." (Pl.'s Stmt. Facts ¶ 1.) Dr. Kelly thus argues that Plaintiff's present position – that he was suicidal from May 2012 to at least August 7, 2012 – is inconsistent with his assertion that he was not a threat to himself or others during this time period. Plaintiff contends that Dr. Kelly takes his deposition testimony out of context because he stated he was not a threat when he was "forced" to take psychotropic medications. The Court agrees. Examining the facts and all reasonable inferences in Plaintiff's favor, his position that he was not a threat when health care staff administered his psychotropic medications is not clearly inconsistent with his present claim that he was suicidal during May to August 2012.

Whether Plaintiff's positions in these two lawsuits are clearly inconsistent is only one factor the Court considers under the equitable doctrine of judicial estoppel. Another relevant factor is that Plaintiff did not successfully persuade the Court to accept his earlier position. *See Wells,* 707 F.3d at 760. To clarify, Plaintiff chose to voluntarily dismiss – with prejudice – his earlier lawsuit in which Defendants accused him of committing fraud on the Court. (12 C 3840, R. 163, 6/25/15 Ruling.) Also, despite Dr. Kelly's argument to the contrary, it would be a stretch to conclude that because the Court did not dismiss Plaintiff's original pro se complaint in its initial screening pursuant to 28 U.S.C. § 1915A, the Court accepted Plaintiff's earlier

---

12 C 5372; *Boyce v. Martella*, No. 13 C 6526; *Boyce v. Johnson*, No. 13 C 6832; *Boyce v. Lemke*, No. 14 C 0108; *Boyce v. Obaisi*, No. 13 C 5746; *Boyce v. Obaisi*, No. 14 C 0418; *Boyce v. Madigan*, No. 15 C 7580; and *Boyce v. Madigan,* No. 15 C 9268.

position.

Therefore, the Court, in its discretion, denies Dr. Kelly's request to apply the equitable doctrine of judicial estoppel under the circumstances. The Court now turns to the merits of Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Kelly.

## III. Eighth Amendment Deliberate Indifference Claims

In his Amended Complaint, Plaintiff alleges that Dr. Kelly was deliberately indifferent to his serious medical needs in relation to his attempted suicide, as well as the physical injuries he suffered as a result of his attempted suicide and physical injuries related to an inmate attacking him. "A prison official may be found in violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [his] serious medical needs.'" *Conley v. Birch,* 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Deliberate indifference claims contain both an objective and a subjective component, namely, the inmate must have an objectively serious medical condition and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Townsend v. Cooper,* 759 F.3d 678, 689 (7th Cir. 2014). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

With respect to the subjective component of the deliberate indifference test, a plaintiff must show that the defendant was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate

10

health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio,* 792 F.3d 768, 777 (7th Cir. 2015) (internal citations omitted). It is well-established that "[t]here is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining deliberate indifference claims, courts examine the totality of the inmate's medical care. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000).

The Court first turns to Plaintiff's deliberate indifference claim against Dr. Kelly based on his attempted suicide. "Suicide is a 'serious harm' and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack ex rel. Turbin v. Cnty. of Wood,* 226 F.3d 525, 529 (7th Cir. 2000). As the Seventh Circuit teaches, "[i]n suicide cases, the objective element 'is met by virtue of the suicide itself, as it goes without saying that suicide is a serious harm.'" *Rosario v. Brawn,* 670 F.3d 816, 821 (7th Cir. 2012) (quoting *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir. 2006)). The Court thus turns to the subjective component of Plaintiff's deliberate indifference claim in relation to his suicide attempt.

"Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins*, 462 F.3d at 761; *see also Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). Under the first requirement, "the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Collins*, 462 F.3d at 761.

Here, Plaintiff argues that Dr. Kelly subjectively knew that he was at a substantial risk of committing suicide based on Plaintiff's mental health history dating back to May 2011, although it is undisputed that Plaintiff never reported that he had any suicidal ideations while Dr. Kelly was his psychiatrist and that Dr. Kelly did not make any clinical findings that Plaintiff was experiencing suicidal ideations. In particular, Plaintiff argues that Dr. Kelly knew that he was depressed and that Plaintiff stopped taking prescription medication in February 2012. Plaintiff, however, admits that he decided – on his own – to stop taking anti-depressants because of the side effects. (R. 110, Resp. Brief, at 1.) Further, Plaintiff relies on his deposition testimony that after he attempted suicide on August 7, 2012, he told Dr. Kelly that he had done so. Informing Dr. Kelly of his attempted suicide after the fact does not support a finding that Dr. Kelly subjectively knew Plaintiff was at a substantial risk of committing suicide prior to his attempt. Turning to Plaintiff's best argument, and construing the facts and reasonable inferences in his favor, Plaintiff posits that because Dr. Kelly was involved in staff meetings with the mental health staff, Dr. Kelly knew about Plaintiff's condition because he reported suicidal ideations to Dr. Briney and other health care staff members in May and July 2012, which was prior to his August 7, 2012 suicide attempt. These facts, viewed generously, create a genuine dispute for trial that Dr. Kelly subjectively knew that Plaintiff was at a substantial risk of committing suicide sometime prior to his August 7, 2012 attempt. Thus, the Court turns to whether Dr. Kelly intentionally disregarded this risk.

Examining the evidence and all reasonable inferences in a light most favorable to Plaintiff, he fails to sufficiently explain how Dr. Kelly intentionally disregarded his risk of committing suicide, keeping in mind that it is undisputed that during the time period in which Dr. Kelly treated Plaintiff, Plaintiff did not report any suicidal ideations. Plaintiff, for example,

argues that although Dr. Kelly was aware that he was no longer taking his anti-depressants, Dr. Kelly did not change his course of treatment. As discussed above, however, Plaintiff admits that he did not want to take the anti-depressants due to the side effects. Moreover Plaintiff's argument that Dr. Kelly should have changed the course of treatment for his depression, especially in light of Plaintiff's choice not to take anti-depressants, is merely a disagreement with Dr. Kelly's medical judgment, which does not show that Dr. Kelly acted with the requisite deliberate indifference. *See Pyles,* 771 F.3d at 409.

The Court further notes that it is undisputed that Dr. Kelly officially stopped treating Plaintiff on February 29, 2012, and that Plaintiff was on the caseload of other Stateville health care staff members. This is relevant because § 1983 liability is premised on the wrongdoer's personal responsibility, namely, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). Viewing the facts and all reasonable inferences in Plaintiff's favor, he has failed to present evidence creating a disputed fact for trial that Dr. Kelly intentionally disregarded the substantial risk of the likelihood that Plaintiff would attempt suicide. The Court grants this aspect of Dr. Kelly's summary judgment motion.

Next, Plaintiff bases his Eighth Amendment deliberate indifference claim on Dr. Kelly's failure to properly treat the physical injuries that Plaintiff suffered as a result of his attempted suicide. More specifically, on August 10, 2012, after his suicide attempt, a physician's assistant conducted a medical evaluation of Plaintiff based on his complaint of neck pain. (Def.'s Stmt. Facts ¶ 35.) After the physician's assistant performed the physical examination, she prescribed Tylenol 325mg and an analgesic balm for his pain. (*Id.*) The medical records also indicate that there was no bruising or ligature marks on Plaintiff's neck. (*Id.*)

13

Putting aside whether Plaintiff's neck pain was an objectively serious medical condition under the first deliberate indifference prong, Plaintiff has failed to present any evidence that Dr. Kelly was aware of his neck pain or personally involved in the treatment of his pain in the first instance. *See Farmer,* 511 U.S. at 837; *Kuhn,* 678 F.3d at 555-56. Moreover, Plaintiff's argument that Stateville medical staff were deliberately indifferent because they failed to give him stronger pain medication establishes – at best – that Plaintiff disagreed with his course of treatment, especially because Plaintiff does not explain how this course of treatment fell below prevailing medical standards. *See Pyles,* 771 F.3d at 409. Therefore, the Court grants Dr. Kelly's summary judgment motion in this respect.

On a final note, although Plaintiff mentions that Dr. Kelly was deliberately indifferent to the physical injuries resulting from an inmate attacking him sometime in June 2012, Plaintiff did not develop this claim by applying the relevant facts to the pertinent case law, and thus it is waived. *See Mahaffey v. Ramos,* 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *Steen v. Myers,* 486 F.3d 1017, 1020-21 (7th Cir. 2007) (absence of discussion in brief amounts to abandonment of claims).

## CONCLUSION

For these reasons, the Court grants Defendant Dr. Kelly's motion for summary judgment in its entirety and dismisses him as a Defendant to this lawsuit. [92].

**Dated:** November 13, 2015

**ENTERED**

*Amy J. St. E*

_____
**AMY J. ST. EVE**
**United States District Court Judge**