IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY BOYCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 2967 |
| v. | ) | |
| | ) | |
| DANIEL A. GRAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 28, 2013, Plaintiff Anthony Boyce, an inmate of the Illinois Department of Corrections ("IDOC"), filed the present six-count Amended Complaint, by counsel, alleging that Defendants Dr. Jonathan Kelly, M.D. ("Dr. Kelly"),[1] a psychiatrist employed by Wexford Health Sources, Inc. ("Wexford"), and certain IDOC employees, namely, Daniel Gray, Junette Bennett, Kimberly Briney, Ralph Burkeybile, Salvador Godinez, and Marcus Hardy (collectively "IDOC Defendants") violated his Eighth Amendment rights. Plaintiff also brings a First Amendment claim against Defendant Correctional Officer Gray alleging that he was denied his basic civil right to file prison grievances without fear of retaliation.

Before the Court is the IDOC Defendants' partial motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1. For the following reasons, the Court grants the IDOC Defendants' partial summary

---

[1] On November 13, 2015, the Court granted Dr. Kelly's motion for summary judgment and dismissed him as a Defendant to this lawsuit. [123]. The Court presumes familiarity with its November 13, 2015 Memorandum Opinion and Order.

judgment motion in its entirety. In their summary judgment motion, however, the IDOC Defendants do not seek dismissal of Plaintiff's First Amendment retaliation claim against Defendant Correctional Officer Daniel Gray as alleged in Count II of the Amended Complaint and Plaintiff's Eighth Amendment failure to protect claim against Officer Gray based on Officer Gray allegedly soliciting another inmate to attack Plaintiff as alleged in Count III. *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (Eighth Amendment imposes duty on prison officials "to take reasonable measures to guarantee the safety of the inmates."); *Perez v. Fenoglio,* 792 F.3d 768, 783 (7th Cir. 2015) ("filing a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim"). As such, these claims remain in this lawsuit.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule

2

56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted). Accordingly, the Court will not consider the additional facts set forth in Plaintiff's Rule 56.1(b)(3)(A) Response because any such facts must be in his Rule 56.1(b)(3)(C) Statement of Additional Facts. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008); *see also Sojka,* 686 F.3d at 398.

The purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). With these standards in mind, the Court turns to the relevant facts of this lawsuit.

## II.     Relevant Facts

### A.     Parties

During the relevant time period, Plaintiff was incarcerated at Stateville Correctional Center ("Stateville") and Defendant Hardy was Stateville's warden. (R. 96, Defs.' Rule 56.1 Stmt. Facts ¶¶ 1, 8.) Also during this time period, Defendant Burkeybile was a Lieutenant at Stateville, Defendant Gray was a Stateville correctional officer, and Defendant Bennett was a

Stateville counselor. (*Id.* ¶¶ 5, 6, 9.) In addition, Defendant Briney was a Stateville psychologist and Defendant Godinez was IDOC's Director during the time period at issue in this lawsuit. (*Id.* ¶¶ 4, 7.)

### B. Plaintiff's Mental Health Care

From May 24, 2011 until February 29, 2012, Stateville psychiatrists, psychologists, and mental health care professionals treated Plaintiff in relation to his mental health care needs. (*Id.* ¶ 10.) During that time period, Plaintiff did not report any suicidal thoughts or ideations. (*Id.* ¶ 11.) Dr. Kelly, Plaintiff's psychiatrist from May 24, 2011 through February 29, 2012, treated Plaintiff for depression by prescribing anti-depressants, and it is undisputed that Plaintiff did not tell Dr. Kelly or any other Stateville mental health care professionals that he had any suicidal ideations or thoughts during this time period. (R. 94, Kelly's Rule 56.1 Stmt. Facts ¶¶ 9-12, 16, 18-22, 26.) Further, it is undisputed that Dr. Kelly did not make any clinical findings that Plaintiff was experiencing suicidal ideations while treating Plaintiff. (*Id.* ¶ 52.)

Plaintiff asserts that he started having suicidal thoughts beginning in May 2012 as the result of Defendant Correctional Officer Gray's harassment of him. (*Id.* ¶ 27.) On May 7, 2012, Dr. Briney saw Plaintiff for a mental health care assessment and reported that Plaintiff was stable. (Defs.' Stmt. Facts ¶ 14.) Dr. Briney also reported that Boyce had medical issues due to his prior depression medication. (R. 111, Pl.'s Stmt. Facts ¶ 1.) Plaintiff believes he may have told Dr. Briney about his suicidal ideations during this appointment. (Defs.' Stmt. Facts ¶ 15.) On June 5, 2012, Plaintiff filed a grievance stating that the "meds have made me weakminded," although it is undisputed that Dr. Kelly discontinued this particular medication, Remeron, on August 9, 2011, due to Plaintiff's complaints. (*Id.* ¶ 4; Kelly's Stmt. Facts ¶ 16.) Similarly, Dr.

4

Kelly discontinued Plaintiff's prescription for the anti-depressant Trazadone on February 29, 2012 per Plaintiff's request. (Kelly's Stmt. Facts ¶ 24.) On July 5, 2012, Dr. Briney saw Plaintiff for assessment and, according to Plaintiff, he told Dr. Briney of his suicidal thoughts at this assessment. (*Id*. ¶ 29; Defs.' Stmt. Facts ¶ 17.) After Dr. Briney performed the July 5, 2012 assessment, she reported that Plaintiff did not present with mental health issues and that he was stable. (Defs.' Stmt. Facts ¶ 17.) At that time, Dr. Briney was aware that Plaintiff was not taking any anti-depressants. (R. 96-6, Defs.' Ex. F, Briney Dep., at 47-48.) There is also evidence in the record that Plaintiff was not on Dr. Briney's caseload after July 5, 2012. (*Id*. at 77.)

Plaintiff asserts that he attempted suicide on August 7, 2012 by trying to hang himself with a ripped sheet attached to a vent in his cell. (Kelly's Stmt. Facts ¶ 32; Defs.' Stmt. Facts ¶ 19.) On August 9, 2012, a Stateville medical professional examined Plaintiff for his mental health needs and, at that time, Plaintiff reported that he had attempted suicide. (*Id*. ¶ 21; Kelly Stmt. Facts ¶ 34.) Thereafter, on August 10, 2012, a physician's assistant conducted a medical examination of Plaintiff based on his complaints of neck pain that resulted from his attempted suicide. (Defs.' Stmt. Facts ¶ 22; Kelly Stmt. Facts ¶ 35.) The physician's assistant prescribed analgesic balm and Tylenol for Plaintiff's neck pain. (Defs.' Stmt. Facts ¶ 22; Kelly Stmt. Facts ¶ 35.) The August 10, 2012, medical records do not indicate that there was any bruising or ligature marks on Plaintiff's neck. (Kelly's Stmt. Facts ¶ 35.)

After his self-reported attempted suicide, Stateville staff did not put Plaintiff on a crisis watch. (Pl.'s Stmt. Facts ¶ 11.) Nevertheless, Stateville social workers conducted mental health reviews of Plaintiff on August 30, 2012 and September 27, 2012. (Kelly's Stmt. Facts ¶¶ 26,

5

27.) Further, Stateville mental health care professionals evaluated Plaintiff in June, August, September, and December 2013. (*Id.* ¶¶ 38-42.) Also, mental health care professionals evaluated Plaintiff in January and February 2014 prior to his transfer to Pontiac Correctional Center. (*Id.* ¶¶ 43-45; Defs.' Stmt. Facts ¶ 34.)

### C. Correctional Defendants' Interactions with Plaintiff

Plaintiff's claims against Defendant Correctional Officer Gray are partially based on Gray's intimidation in connection with Plaintiff filing prison grievances. (Defs.' Stmt. Facts ¶ 24.) Although the parties do not set forth specific evidence as to how many grievances Plaintiff filed while he was incarcerated at Stateville, at his deposition, Plaintiff testified that he filed "hundreds" of them. (R. 96-2, Ex. B, Pl.'s Dep., at 141.) In any event, according to Plaintiff, Defendant Gray's intimidation took the form of racial slurs, Defendant Gray telling Plaintiff to kill himself, and Defendant Gray shaking down Plaintiff's cell sometime in May 2012. (Defs.' Stmt. Facts ¶ 24; Pl.'s Dep., at 99-101.) Also, Plaintiff testified at his deposition that Gray solicited another inmate, Robert Schaffer, to attack him. (Defs.' Stmt. Facts ¶ 25.) Plaintiff further testified that he told Defendant Lieutenant Burkeybile that he was having thoughts of suicide, although he was not sure when this conversation took place. (*Id.* ¶ 26.) Also, Plaintiff testified that he told Correctional Officer Bennett that he was suicidal. (*Id.* ¶ 29.) Moreover, Plaintiff testified at his deposition that Warden Hardy denied his grievances concerning his suicidal thoughts. (*Id.* ¶ 31.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

6

56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

**ANALYSIS**

**I.    Qualified Immunity**

Defendants first argue that they are protected by qualified immunity because there is no clearly established right "to the proper implementation of adequate suicide prevention protocols." *Taylor v. Barkes*, ___ U.S. ___, 135 S. Ct. 2042, 2044-45, 192 L.Ed.2d 78 (2015) (per curiam). To clarify, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Id.* at 2044. In *Taylor*, the Court held that "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention

7

measures," although, "officials who know of an inmate's particular vulnerability to suicide must not be recklessly indifferent to that vulnerability." *Id.* at 2044, 2045. In response, Plaintiff explains that, unlike *Taylor*, he is not challenging IDOC's suicide protocols. Rather, Plaintiff argues that Defendants were deliberately indifferent to his risk of suicide in violation of the Eighth Amendment. *See Cavalieri v. Shepard,* 321 F.3d 616, 623 (7th Cir. 2003) (it is clearly established that officials will be liable if they are deliberately different to substantial suicide risk). As such, qualified immunity does not apply under the circumstances. The Court therefore turns to Plaintiff's Eighth Amendment claims keeping in mind that Plaintiff is not challenging Stateville's suicide protocol or policies.

## II.     Eighth Amendment Deliberate Indifference Claims

In his Amended Complaint, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in relation to his attempted suicide, as well as the physical injuries he suffered as a result of his attempted suicide and injuries related to an inmate attacking him. "A prison official may be found in violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [his] serious medical needs.'" *Conley v. Birch,* 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Deliberate indifference claims contain both an objective and a subjective component, namely, the inmate must have an objectively serious medical condition and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Townsend v. Cooper,* 759 F.3d 678, 689 (7th Cir. 2014). "A medical condition is objectively serious if a physician has diagnosed it

8

as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

With respect to the subjective component of the deliberate indifference test, a plaintiff must show that the defendant was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio,* 792 F.3d 768, 777 (7th Cir. 2015) (internal citations omitted). It is well-established that "[t]here is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining deliberate indifference claims, courts examine the totality of the inmate's medical care. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000).

### A. Risk of Suicide

The Court first turns to Plaintiff's deliberate indifference claim based on his attempted suicide. "Suicide is a 'serious harm' and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack ex rel. Turbin v. Cnty. of Wood,* 226 F.3d 525, 529 (7th Cir. 2000). As the Seventh Circuit teaches, "[i]n suicide cases, the objective element 'is met by virtue of the suicide itself, as it goes without saying that suicide is a serious harm.'" *Rosario v. Brawn,* 670 F.3d 816, 821 (7th Cir. 2012) (quoting *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir. 2006)).

9

The Court thus turns to the subjective component of Plaintiff's deliberate indifference claim in relation to his suicide attempt. "Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins*, 462 F.3d at 761; *see also Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). Under the first requirement, "the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Collins*, 462 F.3d at 761.

Examining the facts and all reasonable inferences in Plaintiff's favor, the record reveals that before his attempted suicide on August 7, 2012, Plaintiff reported to Dr. Briney at least once, if not twice, that he had suicidal ideations. After Dr. Briney performed assessments of Plaintiff on both May 7, 2012 and July 5, 2012, she determined that Plaintiff did not present with mental health issues and was stable. Under these circumstances, Plaintiff has failed to raise a genuine issue of fact for trial that Dr. Briney believed he was at a substantial risk of committing suicide. *See Goetsch v. Ley,* 444 F. App'x 85, 88-89 (7th Cir. 2011). In *Goetsch*, the Seventh Circuit concluded that a prison psychologist did not subjectively know that an inmate was at a substantial risk of committing suicide because, after evaluating the inmate and his medical history, the psychologist did not believe that the inmate was at risk of suicide and also concluded that he did not pose a threat to himself. *See id.* at 88. In making its determination, the Seventh Circuit noted that even if the inmate had told the psychologist that he planned to hurt himself, prison officials are not required to believe everything inmates tell them – even when the topic is suicide. *See id.* at 89. Indeed, the Seventh Circuit has repeatedly stated that prison staff are not

required to believe everything inmates say, especially if the staff member verifies or investigates the complaint or threat. *See Olson v. Morgan,* 750 F.3d 708, 713 (7th Cir. 2014); *Knight v. Wiseman,* 590 F.3d 458, 466 (7th Cir. 2009); *Riccardo v. Rausch,* 375 F.3d 521 (7th Cir. 2004).

Here, after Plaintiff told her that he had suicidal thoughts, Dr. Briney made her own independent determinations when assessing Plaintiff's mental health and concluded that Plaintiff did not present with mental health issues and was stable. Accordingly, Dr. Briney was not subjectively aware that Plaintiff was at imminent risk of suicide under the Seventh Circuit's guidance in *Goetsch*. The Court further notes that after July 5, 2012, Plaintiff was not on Dr. Briney's caseload. Under these circumstances, Plaintiff has not set forth sufficient evidence that Dr. Briney believed that Plaintiff may imminently take his own life prior to his suicide attempt. *See Collins*, 462 F.3d at 761.

As to the other IDOC Defendants, Plaintiff has set forth evidence creating a genuine fact for trial that they knew that he had suicidal thoughts at some point prior to his August 7, 2012 attempt.[2] Plaintiff, for example, asserts that he filed emergency grievance(s) about his suicidal thoughts, which Warden Hardy rejected. He further presents evidence that he told Lieutenant Burkeybile and Officer Bennett that he was going to attempt suicide, although he was not sure when these conversations took place. Plaintiff also posits that Defendant Gray had knowledge of his suicidal ideations based on Defendant Gray's harassment of him.

Being put on notice that Plaintiff had suicidal thoughts at some point prior to his August 2012 suicide attempt does not fulfill the requirement that Defendants were aware of the

---

[2] In his response brief, Plaintiff concedes that his claims against Director Godinez are moot. (R. 112, Resp., at 14-15.)

significant likelihood that Plaintiff may imminently seek to take his own life. *See Collins*, 462 F.3d at 761. Plaintiff must show more than he told these Defendants that he had suicidal thoughts because "it is not enough that there was a danger of which a prison official should have been aware," but rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack,* 226 F.3d at 529 (citing *Farmer,* 511 U.S. at 837). Put differently, "[l]iability cannot attach where 'the defendants simply were not alerted to the likelihood that [the prisoner] was a genuine suicide risk.'" *Collins,* 462 F.3d at 761 (citation omitted).

Viewing the facts and reasonable inferences in Plaintiff's favor, he has failed to present sufficient evidence that – although he told the IDOC Defendants that he had suicidal thoughts at some point prior to his suicide attempt – Defendants drew the inference that Plaintiff was a genuine suicide risk. In other words, there is no evidence in the record that, although Plaintiff threatened suicide, Defendants were aware of the genuine risk that Plaintiff would follow through on his threat. *See Smith v. Alvarez*, 898 F.Supp.2d 1057, 1066 (N.D. Ill. 2012) ("defendants were not alerted to the likelihood that the plaintiff was a genuine suicide risk, as opposed to simply acting out"). To clarify, prison officials can defeat deliberate indifference claims if "they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844.

Even if the IDOC Defendants had made the inference that Plaintiff would follow through with his threat of suicide, Plaintiff does not sufficiently explain what more Stateville's staff could have done to take reasonable preventative steps under the circumstances. As discussed, there is undisputed evidence in the record that IDOC mental health care professionals provided

12

continuing, ongoing mental health care for Plaintiff before and after his suicide attempt until his transfer from Stateville to Pontiac at the end of February 2014. The undisputed evidence further reveals that Dr. Briney made the professional determination in May and July 2012 that Plaintiff did not present with mental health issues and was stable. Thus, Plaintiff's argument that Stateville staff should have put him on crisis watch is unavailing because Stateville medical staff did not identify him as a suicide risk in the first instance. *See Matos v. O'Sullivan,* 335 F.3d 553, 558 (7th Cir. 2003).

Moreover, the Court cannot view Plaintiff's attempted suicide in a vacuum when determining if Stateville staff took reasonable measures under the circumstances. In addition to the present lawsuit, Plaintiff has filed at least nine other civil rights actions in this district and admitted at his deposition that he filed hundreds of grievances while incarcerated at Stateville. *See Boyce v. Kelly*, No. 12 C 3840; *Boyce v. Carter*, No. 12 C 5372; *Boyce v. Martella*, No. 13 C 6526; *Boyce v. Johnson*, No. 13 C 6832; *Boyce v. Lemke*, No. 14 C 0108; *Boyce v. Obaisi*, No. 13 C 5746; *Boyce v. Obaisi*, No. 14 C 0418; *Boyce v. Madigan*, No. 15 C 7580; and *Boyce v. Madigan,* No. 15 C 9268. Plaintiff's other lawsuits reveal that around the same time period that he had suicidal thoughts, Plaintiff filed numerous letters, written requests for medical care, and emergency prison grievances concerning other medical issues and conditions of confinement. *See Boyce v. Johnson*, No. 13 C 6832; *Boyce v. Carter*, No. 12 C 5372; *Boyce v. Kelly*, No. 12 C 3840. Also, during this time period, Stateville's healthcare unit personnel saw and treated Plaintiff on countless occasions regarding his medical requests. *See Boyce v. Johnson*, No. 13 C 6832; *Boyce v. Martella*, No. 13 C 6526, *Boyce v. Carter*, No. 12 C 5372. This evidence further

underscores Plaintiff's failure to create a genuine dispute for trial that Stateville medical staff recklessly disregarded his health care and mental health care needs.

Likewise, Plaintiff's argument that a jury could infer that the risk of suicide risk was obvious based on his medical history is unavailing because any such inference is not reasonable in light of the fact that Plaintiff did not report any suicidal ideations prior to May 2012. *See Cung Hnin v. TOA (USA), LLC,* 751 F.3d 499, 508 (7th Cir. 2014) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Similarly, there is no evidence in the record that Stateville mental health care professionals reported Plaintiff as a suicide risk or that Plaintiff attempted suicide or tried to harm himself prior to his August 2012 attempt.

Last, it is well-settled that non-medical prison personal are entitled to defer to the judgment of prison health care professionals so long as they do not ignore the inmate's complaints. *See Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010); *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir. 2008). Plaintiff's unsupported argument that the non-medical Defendants cannot rely on the Stateville mental health care staff fails in light of the ongoing, significant mental health care treatment that staff provided Plaintiff while he was incarcerated at Stateville. The Court therefore grants the IDOC Defendants' motion in this respect.

**B.     Failure to Treat**

**1.     Physical Injuries Resulting from Attempted Suicide**

Plaintiff also argues that the IDOC Defendants failed to properly treat his neck pain after his attempted suicide. Not only is Warden Hardy "entitled to relegate to the prison's medical staff the provision of good medical care," *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009),

Plaintiff has failed to explain how the non-medical IDOC Defendants are responsible for his medical treatment concerning his neck. Plaintiff, for example, does not argue – much less present any evidence – that he complained to the non-medical Defendants about his neck pain and that they failed to investigate the situation. *See, e.g., Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006). Moreover, as discussed, non-medical prison staff are entitled to defer to the judgment of prison health care professionals. *See Berry,* 604 F.3d at 440.

The Court nevertheless reviews Plaintiff's medical treatment for his neck pain. More specifically, on August 10, 2012, after his suicide attempt, a physician's assistant conducted a medical evaluation of Plaintiff. After the physician's assistant performed the physical examination, she prescribed Tylenol and an analgesic balm for his pain. The medical records indicate that there was no bruising or ligature marks on Plaintiff's neck. Assuming that Plaintiff's neck pain was an objectively serious medical condition under the first deliberate indifference prong, Plaintiff argues that IDOC staff were deliberately indifferent because they failed to give him stronger pain medication. At best, this argument supports the conclusion that Plaintiff disagreed with his course of medical treatment, especially because Plaintiff does not explain how this course of treatment fell below prevailing medical standards. *See Pyles,* 771 F.3d at 409 ("A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'") (citations omitted). Therefore, the Court grants the IDOC Defendants' summary judgment motion based on Plaintiff's neck injuries.

## 2. Physical Injuries Resulting From Inmate Attack

Further, Plaintiff contends that the IDOC Defendants knew of and disregarded his serious medical needs after another inmate, Robert Schaffer, attacked him sometime in June 2012. In particular, Plaintiff asserts that Schaeffer struck him in the head and eye. Plaintiff, however, has not developed this claim by applying the relevant facts to the pertinent case law, and thus it is waived. *See Mahaffey v. Ramos,* 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *see also Thornton v. M7 Aerospace LP,* 796 F.3d 757, 769 (7th Cir. 2015) ("District courts are not obliged to scour the record looking for factual disputes."). The Court therefore grants the IDOC Defendants' summary judgment motion regarding Plaintiff's injuries resulting from the attack.

## 3. Mental Health Care Treatment After Suicide Attempt

Last, Plaintiff argues that the IDOC Defendants failed to provide sufficient mental health care treatment after he attempted suicide in August 2012. There is evidence in the record, however, that IDOC mental health care professionals provided continuing, ongoing mental health care for Plaintiff after his suicide attempt until his transfer from Stateville to Pontiac Correctional Center at the end of February 2014. Equally important, Plaintiff does not sufficiently explain how this ongoing care was "blatantly inappropriate" or fell below prevailing medical standards. *See Perez,* 792 F.3d at 777; *Pyles,* 771 F.3d at 409. Without more, and after examining the totality of Plaintiff's medical care after he attempted suicide, the Court would be hard-pressed to conclude that IDOC staff was deliberately indifferent to Plaintiff's mental health

care needs. Accordingly, the Court grants this aspect of the IDOC Defendants' summary judgment motion.

On a final note, Plaintiff agrees with Defendants that he can only seek money damages against the state employees in their individual or personal capacities pursuant to Eleventh Amendment sovereign immunity.

## CONCLUSION

For these reasons, the Court grants Defendants' partial motion for summary judgment in its entirety. [95].

**Dated:** November 16, 2015

                                 **ENTERED**

                                 _____
                                 **AMY J. ST. EVE**
                                 **United States District Court Judge**